# NEWMAN & GREENBERG LLP
## ATTORNEYS

950 THIRD AVENUE
NEW YORK, N.Y. 10022
TEL: (212) 308-7900
FAX: (212) 826-3273
info@newmangreenberg.com

RICHARD A. GREENBERG
STEVEN Y. YUROWITZ
———
WILLIAM J. DOBIE

GUSTAVE H. NEWMAN (1927-2017)

November 11, 2019

**By FedEx (next day delivery)**
Hon. Cathy Seibel
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street - Room 633
White Plains, New York 10601

**FILED UNDER SEAL TO PROTECT
THE CONFIDENTIALITY OF INTIMATE
PERSONAL DETAILS**

*Re:  Matter of Richard P. Liebowitz
      (Berger v. Imagina Consulting, Inc.,
      18 cv 8956 (CS))*

Your Honor:

I represent Richard P. Liebowitz ("Richard") in a contempt proceeding arising out of the above-entitled copyright infringement law suit (the underlying action has since been settled and dismissed). In Your Honor's Order and Order to Show Cause, dated November 1, 2019 (Exhibit A), the Court directed Mr. Liebowitz to appear in person before the Court on November 13, 2019, and, as a penalty for Richard's continuing failure to provide the requested documentation of his grandfather's death which was central to Richard's failure to appear at the scheduled conference on April 12, 2019, Richard was ordered to pay a financial penalty to the clerk of the court each Monday amounting to $100 per business day beginning October 7, 2019, subsequently raised to $500 per business day beginning November 6, 2019, and now totaling by counsel's calculation $3700, not including the Veterans' Day national holiday on Monday, November 11. By the time Richard will appear before the Court on November 13, I have been assured that the entire financial penalty imposed by the Court will have been paid.

For the reasons set forth below, I respectfully request that the Court vacate its two contempt orders, declare Richard's financial penalties satisfied, and permit him to continue to practice before this Court. Counsel has advised Richard on the kind of substantial steps he can take to ensure that his poor judgment or lapse in the *Berger* matter will not be repeated.

NEWMAN & GREENBERG LLP

Hon. Cathy Seibel
November 11, 2019
Page 2

**A. Richard's Background.**   Richard is an unmarried 31-year-old who resides with his
parents in Hewlett, New York.  He graduated with a BA degree in communications from the
University of Pennsylvania in 2010, and with a J.D. degree from Hofstra University Law School
in 2014.  In 2015 he was admitted by the Second Department to the Bar of the State of New
York, and in the same year he opened the Liebowitz Law Firm, located at 11 Sunrise Plaza,
Valley Stream, New York, where he has practiced continuously ever since.  Richard has had no
other employment, experience or supervision as a lawyer.

An avid photographer, Richard's law practice has been devoted exclusively to protecting
and enforcing the copyrights of freelance photographers under the federal copyright statute, 17
U.S.C. §1 *et seq.*  Since its opening, Richard's law practice has grown exponentially, filing
approximately 2000 law suits under the federal copyright statute in the four years of his firm's
existence.  Moreover, because of his burgeoning practice, Richard's firm has grown
commensurately; he now employs a staff of 12, two of whom are lawyers, including an associate
with large commercial firm experience.

In short, while Richard is short on legal experience and training, he obviously fills a need
in the ranks of freelance photographers who struggle to make ends meet financially while their
work is often used by commercial entities, mostly media companies, without permission or
compensation.  And despite the volume of his practice, his clients have never filed a grievance
against Richard or complained about the representation they received from Richard or his firm.[1]

In counsel's view, however, this matter is not about the peculiar nature of Richard's law
practice   It is about Richard's failure to carry out his responsibilities to the Court and adversary
counsel, a lapse caused by the death of a beloved family member, producing in Richard a brief
period of overwhelming grief and dysfunction.

**B. The Death of Richard's Grandfather.**   On the morning of April 9, 2019, Richard's
93-year-old  grandfather, Jaime Radusky, whose family had emigrated from Ukraine to Cuba
after World War II before Jaime and his family, including his daughter Sara (Richard's mother),
emigrated again to the United States, died of a stroke.  Consistent with Jewish Orthodox
tradition, Jaime was buried the same day, April 9, 2019.

---

[1] Attached to this letter as Exhibit B is a letter from Bruce Cotler, President of the New York
Press Photographers Association, Inc., the largest and oldest such association of photographers in the
country, reflecting the valuable contribution and service that Richard and his firm provides to working
photographers in New York City and elsewhere in the country.

NEWMAN & GREENBERG LLP

Hon. Cathy Seibel
November 11, 2019
Page 3

      Attached to this letter as Exhibit C is an original death certificate confirming Jaime's
death on April 9, together with a receipt from the funeral home (Shomrai Hadas, 718-436-8700)
given to the Liebowitz family for their payment of the expenses associated with the preparation
and burial of Jaime's body at a Fairview, New Jersey, cemetery on April 9. The funeral home's
receipt is attached to this letter as Exhibit D. On Friday, November 8, 2019, I spoke by telephone
with "Malkie," an employee of the funeral home, who confirmed to me that the funeral home had
received, prepared and buried Jaime's body on April 9, 2019, a representation corroborated by
the death certificate and the funeral home's receipt. Moreover, the identity of Jaime as Richard's
grandfather is confirmed by 1) Richard's birth certificate (Exhibit E), which identifies his mother
as Sara Radusky, the same last name as her father and Richard's grandfather, 2) the
naturalization papers of Richard's mother, Sara, when she became a citizen of the United States
of America (Exhibit F), reflecting her last name as Radusky, and 3) a copy of the relevant pages
from Jaime's trust agreement (Exhibit G) which reflects Jaime's intent to distribute 10% of his
estate to "Grantor's grandson, Richard Liebowitz." In short, there can be no doubt, certainly
counsel has no doubt, that Richard's aged grandfather, Jaime Radusky, died and was buried on
April 9, 2019.

      **C.  Richard's Failure to Appear at the Conference or to Notify the Court.** The
Court scheduled a discovery conference in the underlying case for the morning of Friday, April
12, 2019. Richard did not attend the conference, nor did he send anyone from his firm to cover
for him. And he failed to call the Court to explain his absence. Richard first contacted the Court
on Monday, April 15, by letter, informing the Court that he had "a death in the family," and
apologized to the Court and opposing counsel for not appearing. The Court now knows from the
foregoing discussion that Richard's initial explanation for his absence was true; his grandfather,
with whom he had a close and loving relationship, had recently died. *See* Section B, *supra*.

      Richard's problem in this matter arose during the rescheduled telephone discovery
conference on April 18, 2019, during which, in response to the Court's probing questions,
Richard mistakenly identified April 12, not April 9, as the date his grandfather died, a mistake he
continued to make in several subsequent submissions to the Court. The Court understandably
was skeptical or mystified at Richard's "death in the family" excuse because he failed to submit
his grandfather's death certificate or any other documentation of his grandfather's death, despite
the Court's continued insistence. The question is: why did Richard fix April 12 as the date his
grandfather died, rather than the true date of April 9. Certainly the Court would have understood
and excused Richard's absence whether the death occurred three days before the conference or on
the morning of the conference, particularly since the Court appeared aware of and knowledgeable
about Orthodox Jewish custom and tradition concerning the week of mourning after the death of
a loved one.

NEWMAN & GREENBERG LLP

Hon. Cathy Seibel
November 11, 2019
Page 4

There can be no excuse for Richard's lapse, whether he stated and maintained the erroneous date of death mistakenly or intentionally. Either would be understandable. For example, Richard may genuinely have misremembered the date of death, and continued to adhere to the April 12 date or, having taken the position that the date of death was April 12, he saw no reason to question his memory or why it should matter. On the other hand, Richard may have thought the Court would not understand his dysfunctional, grieving state originating three days before the conference, and decided to fix the date of death as the morning of the conference. If the latter explanation is the correct one, Richard not only misjudged the Court's knowledge, experience and decency, no doubt as an inexperienced young lawyer might, but he engaged in inexcusable falsity, however immaterial.

Of course, either way, Richard has paid a high price for his failure of memory or falsity concerning the true date his grandfather died. The incident has been a financial disaster. Richard will have paid to the Clerk of the Court $3700 in financial penalties for his alleged contempt; he has paid adversary counsel for his adversary's wasted time at the conference which Richard failed to attend; and Richard has paid thousands of dollars in attorneys fees for counsel's representation in this contempt matter. Nor is financial loss the only adverse consequence. Richard has suffered horrible publicity as a result of being held in contempt and threatened with incarceration by this Court. And of course Richard, a young and inexperienced lawyer, is scared of the damage to his professional career as a result of his conduct and these proceedings. At the risk of appearing to minimize the seriousness of this matter, which counsel would not dare to do, counsel urges this Court to find that Richard has suffered or been penalized enough for his lapse or misconduct.

**D. Remedial Efforts.** Counsel was not retained until Thursday, November 7, 2019, insufficient time to propose to Richard a full range of actions designed to bolster the efficiency and professionalism of his practice. Counsel has, however, recommended that Richard seek psychotherapy to understood and ameliorate the anxieties, tensions and infrequent lapses of Richard's demanding practice.  Counsel has also recommended that Richard enroll in a CLE course addressing small law firm management. Moreover, since counsel is not particularly familiar with the law of intellectual property, specifically copyright infringement and enforcement, counsel does and will recommend to Richard that he seek out a respected mentor in that field whom counsel has yet to identify. Finally, Counsel has known Richard and his family for years, even as long ago as Richard's Bar Mitzvah, and will always be available to render advice and guidance to Richard, and counsel will advise Richard to make use of this resource more often.

NEWMAN & GREENBERG LLP

Hon. Cathy Seibel
November 11, 2019
Page 5

**E. Conclusion.**  Counsel thanks the Court for its patience, understanding and consideration of this relatively lengthy submission.  Richard has learned an important lesson. Counsel doubts that the Court will hear about any similar lapses again on the part of Richard Liebowitz.

Respectfully submitted,

Richard A. Greenberg

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
JASON BERGER,

                                        Plaintiff,

              – against –                                                    **ORDER  and
                                                                    ORDER TO SHOW CAUSE**

IMAGINA CONSULTING, INC.,
                                                                        No. 18-CV-8956 (CS)

                                        Defendant.
--------------------------------------------------------------------x

Seibel, J.

        On April 5, 2019, Defendant filed a letter with the Court requesting a discovery

conference. (Doc. 27.) That same day, I granted Defendant's request and scheduled a discovery

conference for April 12, 2019 at 11 a.m. (Doc. 28.) I also ordered Plaintiff to respond to

Defendant's letter by April 9, (id.), which Plaintiff did, (Doc. 30). On April 12, the Court held

the discovery conference, but Plaintiff's counsel, Richard Liebowitz, did not appear and did not

call or email the Court or Defendant's counsel to explain his absence. (Minute Entry dated Apr.

12, 2019.) That same day, I ordered Plaintiff to show cause in writing, on or before April 17,

2019, why he failed to appear for the conference and why he should not be required to pay

Defendant's attorney's fees for the time expended to appear at the conference. (Doc. 31.) The

Court also rescheduled the conference for April 18, 2019. (Id.)

        By letter dated April 15, 2019, Mr. Liebowitz advised that he had missed the conference

because of a death in the family which was an "unexpected urgent matter" to which he had to

attend. (Doc. 32.) He also said he would be out of the office on April 18 and asked to appear by

phone at the rescheduled discovery conference. (Id.)

The conference was held by phone on April 18. (*See* Minute Entry dated Apr. 18, 2019.) Mr. Liebowitz represented that the death in the family occurred on the morning of April 12 and apologized for not letting Defendant's counsel and the Court know.  During the conference, issues were discussed that reflected negatively on Plaintiff's counsel's credibility.  For example, Plaintiff had answered interrogatories saying his damages calculation had relied on "contracts, invoices, [and] licensing agreements," (Doc. 27 at 1), but when Defendant requested those documents, Plaintiff said he could not produce them without a protective order.  After Defendant agreed to a protective order and the Court signed it, (Doc. 23), Plaintiff still produced nothing, despite twice promising to do so.  (*See* Doc. 27.)  Further, Defendant's counsel represented that Mr. Liebowitz had told Defendant's counsel that he could not comply because he was out of the country due to an emergency, when in reality he was at a trade show in Europe trying to drum up business. At that point, concerned about Mr. Liebowitz's credibility and the possibility that he was trying to increase costs for Defendant's counsel, I determined that I could not merely accept Mr. Liebowitz's representation that he missed the April 12 conference because of a death in the family, and directed that, among other things, by May 1, Mr. Liebowitz provide evidence or documentation regarding who died, when, and how he was notified.  I also permitted Defendant's counsel to submit his billing records relating to the discovery dispute by May 1, with Mr. Liebowitz having until May 15 to submit opposition to Defendant's application that Plaintiff cover those fees.[1]

---

[1] I also expressed concern over how Plaintiff's claim of $5000 in damages could possibly have been made in good faith.

2

On August 26, the day Mr. Liebowitz was required to provide his grandfather's death

certificate pursuant to my August 19 order, Mr. Liebowitz instead submitted another Declaration.

(Doc. 52.) In this Declaration, Mr. Liebowitz argued that he was not in contempt because this

Court's request for his grandfather's death certificate was unlawful, as it "likely constitutes a

usurpation of judicial authority or a breach of judicial decorum," (*id* ¶ 14); his previous

Declarations complied with my previous orders, (*id.* ¶ 15); "there [was] no basis to impose

monetary sanctions," (*id.* ¶ 16); and the Court's assurance that his grandfather's death certificate

would not be made public was insufficient to protect his right to privacy, (*id.* ¶ 17).

On September 27, I endorsed Mr. Liebowitz's latest Declaration, stating that:

> There is nothing unlawful about my August 19, 2019 order. There was also nothing
> unclear about it. Likewise, Mr. Liebowitz's failure to comply is apparent beyond any
> reasonable doubt. Finally, he has not diligently attempted to comply. To the contrary,
> while maintaining that the death occurred (and thus implicitly conceding the existence of
> a death certificate), he has repeatedly refused to provide it, even after the Court made
> clear that his "good faith declarations" were insufficient and after the Court agreed that
> the document need not be publicly filed. He has not shown or even alleged an inability to
> comply.

(Doc. 53.) I therefore declared Mr. Liebowitz to be in contempt of court, and ordered that,

should he fail to comply with my order and provide the requested documentation by October 2,

he would be subject to monetary sanctions of $100 each business day until he complied. (*Id.*) I

also informed Mr. Liebowitz that, "[s]hould this sanction prove insufficient" to ensure his

compliance, "additional or different sanctions [would] be considered." (*Id.*)

On October 2, Mr. Liebowitz wrote a letter to my chambers requesting an in-person

conference to discuss my September 27 order, and also requesting a stay of that order "[f]or just

cause" until the conference could be held. (Doc. 54.) I denied his request, noting that Mr.

Liebowitz's letter had not stated what purpose would be served by an in-person conference, nor

5

# EXHIBIT B



# New York Press Photographers Association, Inc.

225 East 36th Street Suite 1-P New York, New York 10016
(212) 889-6633 · Fax (212) 889-6634
http://www.nyppa.org    E-mail: office@nyppa.org

November 10, 2019

Mr. Richard A. Greenberg, Esq.
Newman & Greenberg LLP
950 Third Avenue, 32nd Floor
New York, NY 10022

Dear Mr. Greenberg:

The New York Press Photographers Association (NYPPA) dates back to 1913, and is a fraternal organization where news photographers could meet on social occasions, exchange ideas and get to know one another better, instead of always meeting on the run at fires and breaking news stories.

New York is still the media capital of the world, and the NYPPA is the oldest press organization in the world, still existing to serve working photographers as a professional and social organization. NYPPA members work for news organizations in the print and electronic media, based within a 75-mile radius of Manhattan. The organization is made up of over 375 active members. We are an accredited 501(c)(6) organization that sponsors regular meetings for social and educational purposes, liaises with governmental agencies whose actions directly affect the media, maintains a committee to work with various college and professional sports teams, publishes a regular newsletter, fields an annual contest with an exhibit and an awards dinner and dance, and holds an annual holiday party, which benefits underprivileged children. Each year, we publish the *New York Press Photographer*, a book displaying the winning work of our members from the annual contest.

I've known Richard Liebowitz, personally and professionally, for roughly 20 years and know him to be a hardworking, compassionate, trustworthy and honest individual. Richard was the youngest member in the NYPPA's history, at 15 years old. I was so impressed with Richard that I would take him out on photo assignments and watch how he would handle himself with subjects of a story. He showed real emotion and empathy at crime scenes, fires and car accidents. He also has a keen eye, a requirement for a good photojournalist.

In 2006, we published a photo book entitled: *Apprentice! Lessons Learned on the Frontlines of Life* (enclosed). The book was a wonderful experience, and I was proud to be his mentor, and even prouder of the fine young man he had become. I was very excited when I heard Richard wanted to become a lawyer, and particularly a copyright lawyer.



# New York Press Photographers Association, Inc.

225 East 36th Street Suite 1-P New York, New York 10016
(212) 889-6633      Fax  (212) 889-6634
http://www.nyppa.org        E-mail: office@nyppa.org

After hearing from helpless members of the organization how major media companies would infringe on their work without paying a fee, he was determined to help. After law school, Richard started his own law practice and was committed to achieve justice for photographers. Richard would speak tirelessly to our members at Association events, as well as other trade associations around the country. He really found his niche, and the word of mouth spread quite a bit through the photography community. I have personally used Richard to collect on infringed-upon photos that I have shot. I know from experience he is a very committed lawyer looking to do right by his clients.

I have nothing but great things to say about this young man, and would be happy to recommend him to anyone who needs his services.

Sincerely,

Bruce Cotler, President
The New York Press Photographers Association, Inc.

*The Oldest Press Association in America*

# EXHIBIT C

# THE CITY OF NEW YORK
## VITAL RECORDS CERTIFICATE



# DEATH TRANSCRIPT

DATE FILED   THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

## CERTIFICATE OF DEATH

Certificate No. 156-19-015051

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
Apr 09 2019 01:56 PM

**1. DECEDENT'S LEGAL NAME** JAIME RADUSKY
(First, Middle, Last)

| | |
|---|---|
| 2a. New York City | 2c. Type of Place |
| 2b. Borough | 1 ☐ Hospital Inpatient |
| Manhattan | 2 ☐ Emergency Dept/Outpatient |
| | 3 ☐ Dead on Arrival |

4 ☐ Nursing Home/Long Term Care Facility   5 ☐ Hospice Facility   6 ☐ Decedent's Residence   7 ☐ Other Specify

2d. Any Hospice care in last 30 days   1 ☐ Yes   2 ☐ No   3 ☐ Unknown

2e. Name of hospital or other facility (if not facility, street address)
New York Weill Cornell Medical Center

| 3a. Date and Time of Death (Month) (Day) (Year-yyyy) | 3b. Time | 4. Sex | 5. Date last attended by a Physician |
|---|---|---|---|
| April 09 2019 | 10:20 ☐ AM ☐ PM | Male | mm 04 dd 09 yyyy 2019 |

6. I certify that death occurred at the time, date and place indicated and that to the best of my knowledge traumatic injury or poisoning DID NOT play any part in causing death and that death did not occur in an unusual manner and was due entirely to NATURAL CAUSES. See instructions on reverse of certificate.

Name of Physician MOISES DOMINGUEZ (Type or Print)   Signature *Moises Dominguez* M.D.

Address 525 E 68th St New York, NY 10065   License No. 283457   Date APR-9-2019

| 7a. Usual Residence State | 7b. County | 7c. City or Town | 7d. Street and Number | Apt. No. | ZIP Code | 7e. Inside city Limits? |
|---|---|---|---|---|---|---|
| New York | New York | New York | 301 E 79th St | Apt 37N | 10075 | 1 ☐ Yes 2 ☐ No |

| 8. Date of Birth (Month) (Day) (Year-yyyy) | 9. Age at last birthday (Years) | Under 1 Year | Under 1 Day | 10. Social Security No. |
|---|---|---|---|---|
| | 93 | Months Days | Hours Minutes | *** *** |

11a. Usual Occupation (Type of work done during most of working life. Do not use retired)   Jewler

11b. Kind of business/industry   Jewelry

12. Hispanic origin?

13. Birthplace (City & State or Foreign Country)   Ukraine

14. Education (Check the box that best describes the highest degree or level of school completed at the time of death)
1 ☐ 8th grade or less   2 ☐ 9th-12th grade; no diploma   3 ☐ High school graduate or GED   4 ☐ Some college credit, but no degree   5 ☐ Associate degree (e.g. AA, AS)   6 ☐ Bachelor's degree (e.g. BA, AB, BS)   7 ☐ Master's degree (e.g. MA, MS, MEng, MEd, MSW, MBA)   8 ☐ Doctorate (e.g. PhD, EdD) or Professional degree (e.g. MD, DDS, DVM, LLB, JD)

| 15. Ever in U.S. Armed Forces? 1 ☐ Yes, 2 ☐ No | 16. Marital/Partnering Status, at time of death 1 ☐ Married 2 ☐ Domestic Partnership 3 ☐ Divorced 4 ☐ Married, but separated 5 ☐ Never Married 6 ☐ Widowed 7 ☐ Other, Specify □ 8 ☐ Unknown | 17. Surviving Spouse's/Partner's Name (If wife, name prior to first marriage) (First, Middle, Last) |
|---|---|---|

18. Father's Name (First, Middle, Last)   Yehudan Leib Radusky

19. Mother's Maiden Name (Prior to first marriage) (First, Middle, Last)   Etel Sinayuk

| 20a. Informant's Name | 20b. Relationship to Decedent | 20c. Address (Street and Number) City & State ZIP Code |
|---|---|---|
| Henry Radusky | Son | |

| 21a. Method of Disposition 1 ☐ Burial 2 ☐ Cremation 3 ☐ Entombment 4 ☐ Donation 5 ☐ Other Specify | 21b. Place of Disposition (Name of cemetery, crematory, other place) Mount Moriah Cemetery |
|---|---|

| 21c. Location of Disposition (City & State or Foreign Country) Fairview New Jersey | 21d. Date of Disposition mm 04 dd 09 yyyy 2019 |
|---|---|

| 22a. Funeral Establishment Shomrei Hadas Chapels | 22b. Address (Street and Number) City & State ZIP Code 3803 14th Ave Brooklyn, NY 11218 |
|---|---|

No Correction History ***

EVT20190417009B



*Gretchen Van Wye*
Gretchen Van Wye, Ph.D., City Registrar as of 9/1/18

April 9, 2019

*Steven P. Schwartz*
Steven P. Schwartz, Ph.D., City Registrar

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made therein, as no inquiry as to the facts has been provided by law.

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.19(b) of the New York City Health Code if the purpose is the evasion or violation of any provision of the Health Code or any other law.

VR 115 (Rev. 01/06)




Y 0 1 2 5 5 8 7 0

# EXHIBIT D

**EXPLANATION OF CHARGES**
Explain charges for embalming and for any items that are
not required by law but may be necessary because of
cemetery requirements, crematory requirements or other
selections made:

_____

_____

_____

_____

*William Aiello Jr.*
Signature of licensed funeral Director                    Date

*William Aiello Jr.*
Printed or Typed Name of Funeral Director

**ACKNOWLEDGEMENT OF RECEIPT**
I have received this itemization of funeral services and
merchandise requested.

_____
Signature                                                 Date

**PUBLIC NOTICE**
The New York State Department of Health is responsible for
licensing and regulating New York State funeral directing
under the Public Health Law.
You may contact the Department at:

    Bureau of Funeral Directing
    New York State Department of Health
    corning Tower, Empire State Plaza
    Albany, New York

**EXCLUSION OF WARRANTY.** The only warranties,
express or implied, grated in connection with the goods
sold with this funeral service are the express written
warranties, if any, extended by the manufacturers thereof.
No other warranties and no warranties of merchantability
or fitness for a particular purpose are extended by the
funeral director.

**STATEMENT OF GOODS AND SERVICES SELECTED**
INVOICE TO __Family of__
__JAIME RADUSKY__

The undersigned hereby authorizes the above funeral
establishment or its representatives to obtain custody of the
remains of __JAIME RADUSKY__
__X HR SON__
initial and state your relation to deceased

The undersigned hereby authorizes the above funeral
establishment or its representatives ☐ to embalm ☐ not to
embalm the remains of

**NA**

initial and state your relation to deceased ☐

Other Authorization by _____

"Charges are only for those items that are used. If we
are required by law to use any items, we will explain the
reasons in writing below."

NUMBER __19-149__
ALLOWANCE _____ $_____
TOTAL FUNERAL CHARGES _____ $_____

Date __4. 9__ 20 __19__

The foregoing statement has been read by (to) me and I
hereby acknowledge receipt of a copy of same and agree to
pay the above funeral account and for such additional
services and materials as are ordered by me on or before
__4. 9__ 20 __19__. In the event that this account is
not paid in accordance with the terms of this agreement, the
undersigned hereby agrees to pay any and all costs and
attorney's fees incurred in connection with the collection of
this account.
Prior to the discussion of these funeral arrangements, I was
presented with a copy of this funeral firm's "General Price
List" for which I hereby acknowledge receipt, and have had
an opportunity to review the firm's Casket Price List and
Outer Interment Receptacle Price List.

**TERMS:** This account becomes due _____. If bill remains
unpaid beyond _____ a late payment charge of _____%
per month (annual rate __%) may be added to the unpaid
portion of the balance due.
    The liability hereby assumed is in addition to the liability
imposed by law upon the estate and others, and shall not
constitute a release thereof.

Signature _____
Relation to Deceased ____SON____
Signature _____
Relation to Deceased _____
By __William Aiello Jr.__
    Print Name of Licensed Funeral Director

**ADDITIONS OR ALTERATIONS OF
SERVICES AND MERCHANDISE
SELECTED:** The following changes
represent items of service and/or
merchandise added, ordered or altered subsequent
to the original funeral agreement.

**AUTHORIZATION INITIAL**

☐ $_____

☐ $_____

Total Adjustments to Funeral Charges ___ $_____
ADJUSTED TOTAL _____ $_____
Credit _____ $_____

| | | |
|---|---|---|
| | | 1,295.00 |
| | | 595.00 |
| | | 395.00 |
| | | 695.00 |
| | | 995.00 |
| | | 395.00 |
| | | 95.00 |
| | 24 | 360.00 |
| | | 54.00 |
| | | 300.00 |

| | |
|---|---|
| **Total** | $5,774.00 |
| **Payments/Credits** | -$5,600.00 |
| **Balance Due** | $174.00 |

PAID IN FULL     - 174.-

BAL = 0

```
————————————————————————————————————{ DECEASED }————————————————————————————————————
DECEASED:           JAIME RADUSKY
DATE OF BIRTH:      ██████████
DATE OF DEATH:      04/09/2019
DATE OF INTERMENT:  04/09/2019
CAUSE OF DEATH:
AGE:                    93                    INTERMENT NO: 30777
————————————————————————————————————{ UNDERTAKER }————————————————————————————————————

UNDERTAKER:         SHOMRE HADAS

PERMIT SIGNATURES:  SON: HENRY RADUSKY



————————————————————————————————————{ RESPONSIBLE PERSON/OWNER }————————————————————————————————————
RESPONSIBLE PERSON: MR HENRY RADUSKY
ADDRESS:            ███████████████
                    ████████████████

OWNER:
————————————————————————————————————{ LOCATION }————————————————————————————————————
GRAVE:              3                     PLOT:
BLOCK:              3                     ROW: A1
SECTION:            A                     DIVISION:
SURVEYOR:                                 SOCIETY: TURNER BENEV.
CASE:               24 X 75               STONE:
PERPETUAL CARE:     N                     PLANTING:
————————————————————————————————————{ OTHER }————————————————————————————————————
ORDER DATE:         05/07/2019            IN DATE: 05/14/2019
SET DATE:           05/16/2019            COMPANY: KOLMAN
TYPE:               FOOTSTONE
REMARKS:            RADUSKY PLOT
```

Perpetual care + Taxus

2,600 + 295

= $2,895       paid 5/19/19

REPORT DATE: 05/19/2019

# EXHIBIT E

New York State Department of Health

Albany, N.Y. 12237

94952

# Certificate of Birth Registration

*This certifies that a certificate of birth has been filed under the name of:*

RICHARD   PAUL   LIEBOWITZ

**Sex:**   Male

**Born on:**   ███████████   TIME:   5:51 A.M.

SOUTH NASSAU COMMUNITIES HOSPITAL

**At:**   OCEANSIDE   , New York

**Name of father:**   TED   LIEBOWITZ

**Maiden name of mother:**   SARA   RADUSKY

**Date filed:**   ███████████

**Date issued:**   ███████████

Local Registration No:   5194

*Registrar of Vital Statistics*
*Address*   TOWN of Hempstead
Town Hall Plaza, Main Street
Hempstead, N.Y.   11550

This certificate is void if it contains any alteration or corrections

# EXHIBIT F

UNITED STATES OF AMERICA

No. 10184660

PETITION No. A13 010 928

CERTIFICATE OF CITIZENSHIP

Petition No. 792951

*Personal description of holder as of date of naturalization: Date of birth*
*complexion* Fair *color of eyes* brown *color of hair* brown *height* 5 *feet* 1 *inches;*
*marital status* Single *Sex* Female

I certify that the description above given is true, and that the photograph affixed hereto is a likeness of me

*Sara Radusky*
(Complete and true signature of holder)

**ORIGINAL**

Age 93 *years; weight 125 pounds; visible distinctive marks* None
*Marital status* Single

UNITED STATES OF AMERICA
EASTERN DIST. OF NEW YORK

Be it known that at a term of the

The United States

held pursuant to law at
on November 5, 1975
*it having been shown to the satisfaction of the court that*
Sara Radusky
*then residing at* Brooklyn

Brooklyn

District

County

Cuba

*intends to reside permanently in the United States (when so required by the Naturalization Laws of the United States), had in all other respects complied with the applicable provisions of such naturalization laws, and was entitled to be admitted to citizenship, thereupon ordered that such person be and (s)he was admitted as a citizen of the United States of America.*

*In testimony whereof the seal of the court is hereunto affixed this* 5th.
*day of* November *in the year of our Lord nineteen hundred and*
Seventy-five

LEWIS ORGEL
U.S. District
Clerk.
By _____ Deputy Clerk.

IT IS PUNISHABLE BY U.S. LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE

# EXHIBIT G

TRUST AGREEMENT, made this _11_ day of _NOV_, 2015, by and between JAIME RADUSKY (hereinafter referred to as the "Grantor") and JAIME RADUSKY (hereinafter together with his successors referred to as the "Trustees").

W I T N E S S E T H :

WHEREAS, the Grantor is desirous of transferring certain property in trust for his own benefit and the benefit of others, to be known during the Grantor's life as the Jaime Radusky Revocable Trust:

NOW, THEREFORE, in consideration of the foregoing and of the covenants in this Agreement contained, it is agreed as follows:

FIRST:    The Grantor simultaneously herewith and as part of the same transaction evidenced by this Trust Agreement hereby transfers, assigns, sets over and delivers to the Trustees the property set forth on Schedule A TO HAVE AND TO HOLD the same IN TRUST, NEVERTHELESS, to keep the same invested and to reinvest the same, to collect the income thereof and pay to or apply for the benefit of the Grantor during his lifetime, without any duty to take into consideration the Grantor's other resources or other income, so much or all of the net income and principal of the trust fund as the Trustees, in their sole and unreviewable discretion, may deem advisable. The Trustees shall also pay to the Grantor so much or all of the net income and principal of the trust fund as the Grantor shall request by an instrument in writing delivered to the Trustees. Any net income that is not distributed shall be accumulated and added to principal.

Upon the death of the Grantor, the trust principal, together with all property distributable to the Trustees as a result of the Grantor's death, whether by will or otherwise, shall be disposed of as follows:

NY1219163.3
221820-10001

New York, along with all furniture, furnishings and household effects located in such residence (the "Residence") shall be disposed of as provided in Article SECOND hereof.

      (3)     All of the rest, residue and remainder of the remaining trust fund (the "trust fund balance") shall be disposed of as follows:



      (a)     ███████████ thereof shall be distributed to the ███████████████ if he is then living; and

      (b)     ███████████ thereof shall be distributed to the ███████████████ if she is then living, subject to the provisions of Article THIRD hereof, or if she is not then living, to her then living issue, per stirpes, subject to the provisions of Article FOURTH hereof; and

      (c)     ███████████ thereof shall be distributed to the ████████████████ if he is then living, or if he is not then living, to his then living issue, per stirpes, or in default of such issue to the then living issue, per stirpes, of the ██████████████ in each case subject to the provisions of Article FOURTH hereof; and

      (d)     Ten percent (10%) thereof shall be distributed to the Grantor's grandson, RICHARD LIEBOWITZ, if he is then living, or if he is not then living, to his then living issue, per stirpes, or in default of such issue to the then living issue, per stirpes, of the Grantor's daughter, SARA, in each case subject to the provisions of Article FOURTH hereof; and

      (e)     ███████████ thereof shall be distributed to the ████████████████ if she is then living, or if she is not then living, to her then living issue, per stirpes, or in default of such issue to the then living issue, per